## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| FRAZ KHAN, et al., | |
| *Plaintiffs*, | |
| v. | Civil Action No. 22-2480 (TJK) |
| U.S. DEPARTMENT OF HOMELAND SE-CURITY, et al., | |
| *Defendant*. | |

## <u>MEMORANDUM OPINION</u>

Fraz Khan and his brother Adam Malik were questioned by federal agents while re-entering the United States in early 2021. Agents held Khan, who is not a U.S. citizen, overnight and then denied him entry. Afterward, Malik's law firm filed Freedom of Information Act requests with several agencies on Khan's behalf. Unsatisfied with the responses, Plaintiffs—the law firm and Khan—sued. The parties now cross-move for summary judgment. For the reasons below, the Court will grant Defendants' motion for summary judgment, deny Plaintiffs' cross-motion, and enter judgment for Defendants.

## I.    Background

In early January 2021, Khan and Malik sought to return to the United States after a trip abroad. ECF No. 24 ¶¶ 29–30; ECF No. 35 at 3. They allege that Customs and Border Protection ("CBP") officers at Dallas-Fort Worth International Airport routed them to secondary inspection, questioned them, searched their phones, and held Khan overnight. ECF No. 24 ¶¶ 31–46. CBP ultimately denied Khan entry to the United States. *Id.* ¶ 44.

Afterward, Malik's law firm filed a series of Freedom of Information Act requests on Khan's behalf to relevant agencies, seeking records relating to Khan and the airport incident. *See*

ECF No. 30-2 ("Suzuki Decl.") ¶¶ 7, 11; ECF No. 30-3 ("Howard Decl.") ¶ 7; ECF No. 30-5 ("Baxley Decl.") ¶ 6; ECF No. 30-6 ("Seidel Decl.") ¶ 5.  Six FOIA requests submitted between March 2021 and April 2022 are at issue here.  Plaintiffs submitted three requests to CBP and one each to the U.S. Citizenship and Immigration Services ("USCIS"), Immigration and Customs Enforcement ("ICE"), and the Federal Bureau of Investigation ("FBI").

Plaintiffs submitted their first request to CBP—request CBP-2021-046570—in March 2021.  Suzuki Decl. ¶ 11.  The agency conducted a search and, in May of that year, released seven pages of records to Plaintiffs, two in full and five in part.  *Id.* ¶ 12.  Plaintiffs appealed CBP's final response.  *Id.* ¶ 13.  CBP granted the appeal in part and conducted a supplemental search.  *Id.* ¶¶ 16, 19.  As a result of that search, CBP released 84 more pages of records either in full or in part.  *Id.* ¶ 19.  It referred two pages of records from the supplemental search to ICE, which ICE reviewed and produced to Plaintiffs, in part.  ECF No. 30-7 ("Pineiro Decl.") ¶ 11.

Plaintiffs submitted their second request to CBP, request CBP-2022-030369, in January 2022.  Howard Decl. ¶ 6.  While that request was pending, and before the agency had released any documents, Plaintiffs filed a purported administrative appeal, which the agency denied as premature.  *Id.* ¶ 13.  In July 2022, CBP issued its final response to the request and released 79 pages of records in part.  *Id.*  It also invoked a *Glomar* response.  *Id.*  Plaintiffs did not file another administrative appeal of this request before filing this suit.

Plaintiffs submitted their third request to CBP, request CBP-2022-071874, in April 2022.  Suzuki Decl. ¶ 6.  CBP deemed the request duplicative of request CBP-2022-030369—which was at that time still pending—and denied the request.  *Id.* ¶ 8.  Plaintiffs appealed the denial of the request in May 2022, and that same month CBP affirmed its denial.  *Id.* ¶¶ 9–10.  CBP advised Plaintiffs to wait for the agency to issue its final determination on request CBP-2022-030369 and

then appeal *that* request or to submit a new (presumably non-duplicative) request.  *Id.* ¶ 10.

Plaintiffs submitted their request to USCIS in May 2021.  Baxley Decl. ¶ 6.  USCIS conducted a search and responded to Plaintiffs in July 2021, releasing 40 pages of records in full or in part.  *Id.* ¶ 8.  Plaintiffs appealed, and USCIS released additional information in 16 pages of records previously released.  *Id.* ¶¶ 9–10.  All the information withheld from the documents USCIS produced was information that "originated with CBP" and which CBP withheld.  *Id.* ¶ 16.

Plaintiffs submitted their request to ICE in May 2022.  Pineiro Decl. ¶ 6.  ICE conducted a search and responded to Plaintiffs on August 17, 2022, reporting that it had found no responsive records.  *Id.* ¶ 10.  Plaintiffs did not administratively appeal the request to ICE before filing this suit.  *Id.*

Plaintiffs submitted their request to the FBI in May 2021.  Seidel Decl. ¶ 5.  The FBI conducted a search and responded to Plaintiffs in June 2021, reporting that it had also identified no responsive records.  *Id.* ¶ 6.  The FBI also asserted its standard *Glomar* response.  *Id.* ¶ 23; *See generally* ECF No. 30-6 Ex. B ("Second Seidel Decl.").  Plaintiffs appealed to the Department of Justice's Office of Information Policy, which upheld the FBI's response in October 2021.  Seidel Decl. ¶¶ 7–9.

On August 19, 2022, Plaintiffs sued CBP; USCIS; ICE; the Department of Homeland Security as the parent agency of CBP, USCIS and ICE; the FBI; and the heads of those five agencies.  ECF No. 1.  They alleged violations of FOIA, the Administrative Procedure Act ("APA"), and the Equal Access to Justice Act ("EAJA").  *Id.*  Plaintiffs requested declaratory and injunctive relief and the appointment of a special master.  *Id.*

Defendants moved to dismiss in part and to strike the complaint.  ECF No. 10.  The Court granted the motion in part.  ECF No. 16.  It dismissed (1) all claims against the "agency head"

defendants, (2) the APA and EAJA claims, (3) several FOIA claims which were based on non-actionable FOIA requests, and (4) the "pattern and practice" FOIA claim. *Id.* The Court also granted Defendants' request to strike the rest of the complaint. *Id.*

Plaintiffs then filed an amended complaint, which Defendants again moved to strike. ECF No. 20. Defendants alleged that the amended complaint failed to comply with the Court's Memorandum Order, contained unnecessary and prejudicial background information, and effectively purported to reassert several claims the Court had previously dismissed. *Id.* The Court granted the motion. ECF No. 23. Then Plaintiffs filed a second amended complaint—the operative complaint—in October 2024. ECF No. 24. And now, at last, the parties cross-move for summary judgment. ECF Nos. 30, 35.

## II.    Legal Standard

"Summary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Rels. Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016) (citation omitted). "The evidence presented must show 'that there is no genuine dispute as to any material fact and the movant[s][are] entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

"In the FOIA context, a district court reviewing a motion for summary judgment conducts a de novo review of the record, and the responding federal agency bears the burden of proving that it has complied with its obligations under the FOIA." *MacLeod v. DHS*, No. 15-cv-1792 (KBJ), 2017 WL 4220398, at *6 (D.D.C. Sept. 21, 2017) (citing 5 U.S.C. § 552(a)(4)(B)); *see also DOJ v. Reps. Comm. for Freedom of Press,* 489 U.S. 749, 755 (1989) ("Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action.'"). The Court

may "treat the [agency]'s factual proffers as conceded, but it must address [its] legal arguments on their merits." *King v. DOJ*, 245 F. Supp. 3d 153, 158 (D.D.C. 2017) (citing Fed. R. Civ. P. 56(e)(2)).

## III.    Analysis

The Court will grant Defendants' motion for summary judgment—and deny Plaintiffs'—for all FOIA requests at issue.  Plaintiffs did not exhaust their administrative remedies for two of the requests.  For the rest, Defendants have complied with FOIA.

### A.    Plaintiffs' Exhaustion of Administrative Remedies

To sue, FOIA requires that the requestor must first administratively appeal an agency decision.  5 U.S.C. § 552(a)(6)(A).  True, when an agency has not responded within the statutory time limits, a requestor has constructively exhausted his administrative remedies.  *Id.* § 552(a)(6)(C). But even when the agency has exceeded the statutory time limits, "an administrative appeal is mandatory if the agency cures its failure to respond within the statutory period by responding to the FOIA request before suit is filed." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 63 (D.C. Cir. 1990).  While not jurisdictional, failure to exhaust administrative remedies under FOIA "precludes judicial review." *Hidalgo v. FBI*, 344 F.3d 1256, 1258–59 (D.C. Cir. 2003).

Defendants claim that Plaintiffs failed to exhaust administrative remedies for two of the FOIA requests: CBP request CBP-2022-030369 and the sole request made to ICE.  ECF No. 30 at 9.  Patrick Howard, a FOIA Branch Chief at CBP, attests that CBP issued a final response for request CBP-2022-030369 on July 26, 2022.  Howard Decl. ¶ 13.  According to Howard, "Plaintiff[s] did not file an administrative appeal following issuance of this final response letter." *Id.* Fernando Pineiro, FOIA director at ICE, also attests that ICE provided its final response to Plaintiffs on August 17, 2022.  Pineiro Decl. ¶ 10.  And Pineiro states that "ICE has no record of an administrative appeal being filed" after the final response letter. *Id.*  Plaintiffs sued on August 19,

2022, after receiving final determinations from CBP and ICE but before filing an administrative appeal with either agency. ECF No. 1. So Defendants argue that summary judgment is warranted on request CBP-2022-030369 and the request submitted to ICE. ECF No. 30 at 8–9.

Plaintiffs concede that they did not appeal the agencies' final determinations of these requests. ECF No. 35-1 ¶¶ 11, 25. But Plaintiffs argue that the agencies' six- and four-month delays in issuing final determinations "alleviate[] the appeal requirement" because they had constructively exhausted administrative remedies. *Id.* Not so. Constructive exhaustion of administrative remedies is limited to circumstances where the agency does not respond to the FOIA request before a plaintiff sues. *See Oglesby*, 920 F.2d at 63. But that is not what happened here. CBP and ICE *did* respond before Plaintiffs sued, so Plaintiffs had a duty to appeal before they marched into court. They didn't. So Plaintiffs have not exhausted their administrative remedies, and judicial review is precluded for these two requests.[1]

### B.     Defendants' Search for Records

Defendants "must show that [they] made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Reps. Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017)

---

[1] For the same reasons, the Court also finds that CBP has met its burden under FOIA regarding request CBP-2022-071874. Recall that Plaintiffs submitted this request—which the agency deemed duplicative of request CBP-2022-030369—while the prior request was still pending. Suzuki Decl. ¶¶ 8–10. CBP denied request CBP-2022-071874 and Plaintiffs' subsequent administrative appeal, stating that Plaintiffs would need to wait for the agency to issue a final determination on request CBP-2022-030369. *Id.* Plaintiffs do not contest this denial—or indeed mention this request—in their summary judgment briefing. And the Court finds that CBP's justifications for closing the duplicate request and focusing on responding to the underlying request were reasonable and in line with its FOIA obligations. *Cf. Toensing v. DOJ*, 890 F. Supp. 2d 121, 140 (D.D.C. 2012) ("For the administrative exhaustion requirements to serve any meaningful purpose, duplicative requests filed by the same individuals for the same information cannot cure all unexhausted prior requests.").

(citation omitted).  Defendants can do so by "submitting reasonably detailed affidavits, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched."  *Id*. (citation modified).  The Court affords an adequate agency affidavit a presumption of good faith.  *Fischer v. DOJ*, 723 F. Supp. 2d 104, 108 (D.D.C. 2010).  This presumption "can be rebutted only with evidence that the agency's search was not made in good faith."  *Id.* (citation omitted).

Defendants have each met their burden to show they performed adequate searches for the three requests for which Plaintiffs exhausted their administrative remedies.  As described below, each relevant Defendant—CBP for request CBP-2021-046570, USCIS, and the FBI—has submitted a declaration by a qualified agency representative.  *See generally* Suzuki Decl.; Baxley Decl.; Seidel Decl.

Shari Suzuki, CBP's FOIA Appeals Branch Chief, states in her declaration that CBP searched its Analytical Framework for Intelligence, TECS, and e3 systems for records responsive to request CBP-2021-046570.  Suzuki Decl. ¶¶ 12, 16.  The agency stores information in these systems about individuals who pose a potential law enforcement or security risk and about all travelers entering and departing the United States.  *Id.* ¶¶ 12, 22–23.  The systems contain biographic and biometric data.  *Id.* ¶ 23.  CBP searched using Khan's name—including multiple spelling variants—as well as his date of birth, alien number, and fingerprint identification number. *Id.* ¶ 21.  CBP also identified certain offices within the agency as "likely sources of records responsive" to the request.  *Id.* ¶ 17.  Specifically, it requested staff at Dallas-Fort Worth International Airport port of entry, the Office of Information Technology, and the Office of Chief Counsel perform searches of their local files and emails.  *Id.* ¶¶ 17, 26–30.

USCIS Chief FOIA Officer James Baxley attests in a sworn declaration that the agency, in

response to Plaintiffs' FOIA request and subsequent appeal, searched its RAILS file tracking system. Baxley Decl. ¶ 15. RAILS contains all A-files, which "serve[] as the official record of an individual's immigrant history." *Id.* ¶¶ 14–15. USCIS used Khan's name and date of birth to run the search, which "was reasonably calculated to locate responsive documents . . . because [it] located the exact A-file and receipt file identified by Plaintiffs." *Id.* ¶ 15.

Michael Seidel, Section Chief of the FBI's Record/Information Dissemination Section, attests that the FBI searched within the agency's Central Records System ("CRS"). Seidel Decl. ¶¶ 6, 20. Plaintiffs' request "include[d] a purported FBI number," which FBI staff determined was "an indication that records concerning Khan would be reasonably likely to be indexed within the automated indices of the [CRS] due to the comprehensive nature of the information contained therein." *Id.* ¶ 11. The FBI searched the CRS's indices using multiple variants of Khan's name, "because entries in the CRS related to an individual are indexed based on the individual's name." *Id.* ¶ 21. It also ran a search "using the FBI number provided in Plaintiff[s'] request letter." *Id.* Neither search returned any responsive records subject to FOIA. *Id.*

Given the content of these declarations, CBP, USCIS, and the FBI have each met their burden on their searches. The declarations set forth in reasonable detail how the agencies made good-faith efforts to search for the requested records where they might reasonably be found. *See, e.g.*, *Fischer*, 723 F. Supp. 2d at 109 (affording agency a presumption of good faith and finding search adequate when an affidavit described the process used and databases searched). Each declaration provides the steps the agency took in crafting its search and enough detail about the methodologies and databases/systems searched to allow the Court to determine that these steps were reasonably calculated to return responsive records. The declarations reflect reasonable diligence and good-faith efforts.

Plaintiffs, for their part, do not really contest the agencies' specific search methodologies. Rather, they argue generally that they acted in bad faith, so the Court should distrust their representations. ECF No. 35 at 12. But Plaintiffs have nothing that might rebut the agencies' presumption of good faith. They point, for example, to the additional searches CBP conducted after Plaintiffs' administrative appeal which resulted in "a second (huge) tranche of documents." *Id.* According to Plaintiffs, this "piecemeal disclosure of documents in response to the FOIA requests" is evidence of dilatory tactics and bad faith on the part of the agency. ECF No. 39 at 7. Not so. Plaintiffs rely on the "perverse theory that a forthcoming agency is less to be trusted in its allegations than an unyielding agency," an approach the D.C. Circuit has rejected. *Mil. Audit Proj. v. Casey*, 656 F.2d 724, 754 (D.C. Cir. 1981). These additional searches are not evidence of bad faith; they might even underscore the agency's good faith.

Plaintiffs' remaining arguments come up short as well. Plaintiffs say that these searches must have been inadequate because "[t]here are additional records that are known to exist but have not yet been turned over." ECF No. 35 at 13. They call the FBI's determination that it found no responsive records subject to FOIA a "frankly incredible" conclusion. *Id.* Plaintiffs also argue that they did not receive any video surveillance footage from CBP, and they claim that CBP failed to produce certain "documents produced in discovery" in other litigation elsewhere. *Id.*

These challenges fail. To begin, in general, the "adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003); *see, e.g.*, *Fischer*, 723 F. Supp. 2d at 109–10. True, "if a review of the record raises substantial doubt, particularly in view of well-defined requests and positive indications of overlooked materials, summary judgment is inappropriate." *Iturralde*, 315 F.3d at 314 (citation modified). But Plaintiffs identify nothing like

that here—rather, they rely on bombastic claims of misconduct unconnected to their FOIA requests or even this case.  With respect to CBP's surveillance video, Plaintiffs fail to connect the dots and explain why the agency should have produced such material or even clarify which request covered it—an important point, considering Plaintiffs' failure to exhaust administrative remedies for one of the requests to CBP.  Finally, Plaintiffs cite to a declaration executed by Khan, but the relevant paragraphs ultimately say nothing about CBP's conduct in this litigation.  *See* ECF No. 35-2 ¶¶ 11–13.

For these reasons, the Court will grant summary judgment to CBP, USCIS and the FBI on the adequacy of their searches.  And because the FBI did not locate any responsive records, that resolves Plaintiffs' claims against the FBI.[2]

### C.    Defendants' Withholdings

"FOIA requires federal agencies to make records publicly available upon request unless one of nine exemptions applies."  *Emuwa v. DHS*, 113 F.4th 1009, 1012 (D.C. Cir. 2024).  It creates a "strong presumption in favor of disclosure" and "places the burden on the agency to justify the withholding of any requested documents."  *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).  When an agency withholds portions of a record, it must still disclose "[a]ny reasonably segregable portion . . . after deletion of the portions which are exempt."  5 U.S.C. § 552(b).

What remains at issue are withholdings connected to two FOIA requests: CBP's request CBP-2021-046570 and the USCIS request.  For request CBP-2021-046570, CBP withheld certain

---

[2] The FBI also invoked its standard *Glomar* response.  Seidel Decl. ¶¶ 6, 7 n.2.  Plaintiffs do not challenge the FBI's assertion of the *Glomar*, and the Court finds that the agency has met its burden to justify the response.  *See generally* Second Seidel Decl. (setting out agency's rationale for asserting a *Glomar* response over four categories of records); *see also Knight First Amend. Inst. v. CIA*, 11 F.4th 810, 815 (D.C. Cir. 2021) (upholding agency *Glomar* response for intelligence sources and methods records).

material under FOIA Exemptions 3, 5, 6, 7(C), 7(E), and 7(F).  Suzuki Decl. ¶ 19.  CBP then referred two pages of records to ICE following its supplemental search, which ICE withheld in part under FOIA Exemptions 6, 7(C), and 7(E).  Pineiro Decl. ¶ 11.  ICE justified those redactions through its own agency declaration.  *Id.*  Similarly, for the USCIS request, CBP withheld information and justified the withholdings in its own agency declaration and *Vaughn* index; more specifically, CBP withheld material under FOIA Exemptions 7(C) and 7(E).  Howard Decl. ¶ 26, Ex. A at 46–56.

With respect to these two remaining requests, Plaintiffs challenge only specific withholdings under Exemption 7(E).  So the Court begins with that exemption for each request.  Still, it is the agencies' burden to show that their withholdings under Exemptions 3, 5, and 7(C) were proper, as well.  So—even in the absence of any objection from Plaintiffs—the Court proceeds to consider their showing on each.  The Court concludes that in all respects, they have met their burden.[3]

### 1.      Request CBP-2021-046570

#### a.      Exemption 7(E)

Exemption 7(E) protects law enforcement records or information when release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  The "requirement

---

[3] CBP also withheld information under Exemptions 6 and 7(F) and Exemption 5's law enforcement investigatory privilege, and ICE also withheld information under Exemption 6.  All information withheld under Exemptions 6 and 7(F) was also withheld under Exemption 7(C), Suzuki Decl. ¶¶ 50, 73; Pineiro Decl. ¶ 11, which has a "lower bar for withholding materials" that applies here, *ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011) (citation omitted).  So the Court need not address whether those exemptions were proper.  The Court also need not weigh the applicability—unsettled in this Circuit—of a law enforcement investigatory privilege under Exemption 5, because that same material was properly withheld under Exemption 7(E).  *See CREW v. DOJ*, 658 F. Supp. 2d 217, 232 (D.D.C. 2009).

that disclosure risk circumvention of the law 'sets a relatively low bar for the agency to justify withholding.'" *Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico (PEER)*, 740 F.3d 195, 205 (D.C. Cir. 2014) (quoting *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011)). "Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Gilman v. DHS*, 32 F. Supp. 3d 1, 18 (D.D.C. 2014) (alteration in original) (quoting *Blackwell*, 646 F.3d at 42).

CBP invoked Exemption 7(E) to withhold "record identification and other law enforcement system case, identification, tracking numbers, and the access location of law enforcement systems and records."[4]  Suzuki Decl. ¶ 64.  CBP also withheld "law enforcement techniques, procedures, and guidelines."  *Id.* ¶ 65.  This material included:

> information related to processing applicants for admission into the United States used in e3 and the TECS database; examination and security procedures; information which would reveal the scope and focus of certain law enforcement techniques and investigations; information which would reveal the strengths or weaknesses of certain law enforcement methods; particular types of secondary inspection; clearance or authorization procedures; procedures, techniques, and guidelines regarding law enforcement databases and systems, including the names of specific law enforcement databases and systems used in a particular context, the types of queries and information sought, how that information is used, query results, and information regarding targeting and system capabilities; names of specific equipment or capabilities used; instructions on how to process certain information; circumstances under which CBP partners with other agencies to share information or

---

[4] CBP has met the threshold requirement to invoke Exemption 7, that the records be "compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7).  Suzuki attests that the withheld records were all "compiled . . . for law enforcement purposes" connected with CBP's mission to "protect the borders, enforce federal immigration law, and facilitate international trade and travel." Suzuki Decl. ¶ 53.  And CBP's assertion that the records are for a law enforcement purpose "is entitled to deference" because CBP is a law enforcement agency.  *See Doe v. DOJ*, 790 F. Supp. 17, 20 (D.D.C. 1992).  Meanwhile, Plaintiffs do not contest that the records were withheld for law enforcement purposes.

to conduct investigations or immigration enforcement; procedures related to exter-
nal and internal coordination and reporting requirements; specific descriptions and
guidelines of the type of evidence needed to establish admissibility or inadmissi-
bility; and techniques and guidelines for identifying and investigating violations of
law, including tactics used to attempt to evade detection and other information that
may be indicative of illegal activity.

*Id.* ¶ 65. According to Suzuki, the material "reveals a great deal of information related to the law

enforcement techniques, procedures, and guidelines that may be used when evaluating and han-

dling immigration and security threats at U.S. borders." *Id.* ¶ 66. CBP withheld it "to protect

CBP's methods in detecting, deterring, evaluating, and processing potential immigration and se-

curity threats at the United States' borders." *Id.* Disclosure of the withheld records and infor-

mation, according to Suzuki, "would risk circumvention of such law enforcement techniques, pro-

cedures, and guidelines related to the inspection process and evaluation of security threats and,

therefore, the law." *Id.*

CBP has met its burden to show that its assertion of Exemption 7(E) was proper. For each

category of records withheld, it has explained how the release of the information "logically . . .

might create a risk of circumvention of the law." *Blackwell*, 646 F.3d at 42 (citation omitted). It

asserts that disclosure of technical systems information would "enable an individual knowledgea-

ble in computer mainframes and systems to improperly access the system, facilitate navigation or

movement through the system, allow manipulation or deletion of data, and interfere with enforce-

ment proceedings." Suzuki Decl. Ex. A at 28. And as for records containing the myriad other

types of information about CBP law enforcement techniques and procedures detailed above, CBP

has shown that, if released, "[t]his information would reveal CBP techniques and procedures re-

lated to inspection and potentially allow individuals to evade detection." *Id.* at 44.

Plaintiffs challenge CBP's assertion of Exemption 7(E) on two grounds, but neither calls

it into question.[5]  First, they argue that Suzuki's declaration and accompanying *Vaughn* index

consists of "cut-and-pasted boilerplate description of the types of exemptions without making any

effort to meet [CBP's] burden to show that a particular exemption applies to particular items."

ECF No. 35 at 9.  They say that CBP's description of withheld material in its *Vaughn* index

"lump[s] all manner of conceivable law enforcement justifications into a single claim for exemp-

tion and make[s] no effort to parse how the disparate justifications might possibly apply to the

material withheld."  *Id.* at 10.  Not so.  The agency's *Vaughn* index, paired with the justifications

present in Suzuki's declaration, provide sufficiently detailed information about the information

withheld and its nexus to a risk of circumvention of the law to allow the Court to conclude that

CBP has met its burden.

Second, Plaintiffs point to CBP's redaction of technical information, including systems

code and "disposition codes" under Exemption 7(E).  ECF No. 35 at 9.  They argue that CBP has

not provided the Court enough information to understand what these technical terms mean.  ECF

No. 35 at 9.  They also attempt to cast doubt upon Suzuki's assertion that release of such technical

information could lead to security vulnerabilities.  *Id.*  Instead, Plaintiffs claim that CBP "is clearly

doing here what it has done throughout: cloaking its desire to not reveal embarrassing information

in the mantle of national security and law enforcement excuses."  *Id.*  The Court disagrees.  Agen-

cies regularly withhold technical information such as database codes and system identifiers under

Exemption 7(E).  *See Kowal v. DOJ*, 107 F.4th 1018, 1033 (D.C. Cir. 2024) (upholding agency's

---

[5] Plaintiffs' challenges to CBP's redactions do not differentiate between sections of the
CBP declarations or combined *Vaughn* index referring to requests CBP-2022-030369, CBP-2021-
046570, or the USCIS request.  Because, as described above, the Court has granted summary judg-
ment to CBP for all claims stemming from request CBP-2022-030369 on the threshold issue of
administrative exhaustion, it does not consider those portions of the CBP declarations or combined
*Vaughn* index related to that request.

withholdings of internal database and file path data under Exemption 7(E) when agency submitted that such information "could aid in the commission of cyberattacks against the agency"). And no doubt, agency declarants are in a better position to speak to their agencies' vulnerabilities than Plaintiffs.

Turning to the two pages of records from which ICE withheld material, ICE invoked Exemption 7(E) over "agency case numbers" and similar law enforcement sensitive information. Pineiro Decl. ¶ 11. This information could risk circumvention of the law by "allow[ing] third parties to thwart law enforcement investigations by compromising the integrity of the database and manipulating the stored information." *Id.* ¶ 48. Plaintiffs do not challenge this assertion of Exemption 7(E) and the Court finds—for substantially the same reasons as stated above—that CBP has met its burden regarding ICE's invocation of this exemption.

Thus, for the reasons described above, CBP has "logically connected withholding with preventing circumvention of the law," *Kowal*, 107 F.4th at 1033, and has met its burden for its withholdings for this request.

### b.    Exemption 3

Under Exemption 3, FOIA's disclosure requirements do not apply to matters that are "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). Thus, the agency "need only show that the statute claimed is one . . . contemplated by Exemption 3 and that the withheld material falls within the statute." *Larson v. U.S. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009). CBP, on behalf of the Transportation Security Administration ("TSA"), applied Exemption 3 to "a very small amount of Sensitive Security Information" ("SSI") under 49 U.S.C. § 114(r). Suzuki Decl. ¶ 33; ECF No. 30-4 ("Esteves Decl.") ¶¶ 8–10. TSA's Chief of the SSI program Christian Esteves attests in a declaration that § 114(r) gives TSA the authority to designate information as

SSI and withhold it under FOIA Exemption 3 if it "would '(A) be an unwarranted invasion of personal privacy; (B) reveal a trade secret or privileged or confidential commercial or financial information; or (C) be detrimental to the security of transportation.'" Esteves Decl. ¶ 8 (quoting 49 U.S.C. § 114(r)(1)). Esteves personally reviewed the information withheld under Exemption 3 and confirmed that it falls under § 114(r). *Id.* ¶ 9. Based on these assertions, CBP has met its burden to show that its invocation of Exemption 3 was proper.

### c.    Exemption 5

The deliberative-process privilege permits agencies to withhold "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Reps. Comm.*, 3 F.4th at 357 (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)). The attorney-client privilege "protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services." *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997). For all withholdings under Exemption 5, an agency must show that "it is reasonably foreseeable that release of those materials would cause harm to an interest protected by that privilege." *Reps. Comm.*, 3 F.4th at 361.

CBP withheld portions of email messages and a proposal document pursuant to the deliberative process privilege, as well as portions of email messages with agency attorneys under the attorney-client privilege. Suzuki Decl. ¶¶ 39–42. Based on Suzuki's declaration and accompanying *Vaughn* index, CBP has met its burden to show that the withheld information falls within the applicable privileges, as well as that the agency conducted the foreseeable harm analysis.[6]

---

[6] Plaintiffs assert, without specifically invoking CBP's Exemption 5 withholdings, that Defendants have "not established the foreseeable harm of disclosure." ECF No. 35 at 12 (citation

### d.      Exemption 7(C)

Exemption 7(C) "exempts from disclosure 'records or information compiled for law en-forcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy.'" *Citizens for Resp. & Ethics in Wash.(CREW) v. DOJ*, 746 F.3d 1082, 1091 (D.C. Cir. 2014) (quoting 5 U.S.C. § 552(b)(7)(C)).  CBP invoked exemption 7(C) to protect personally iden-tifiable information of law enforcement personnel, other government employees, and third parties. Suzuki Dec. ¶ 50.  For these individuals, CBP attests that disclosure of the information at issue would "constitute an unwarranted invasion of privacy," and "would serve no public benefit." *Id.* ¶¶ 57, 59.  CBP determined "the privacy interests of the third parties and CBP personnel identified in the responsive records outweigh any public interest in their release." *Id.* ¶ 59.  The Court is satisfied that releasing the withheld names "could reasonably be expected to constitute an unwar-ranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

Finally, CBP has also met its burden to invoke Exemption 7(C) in the subset of redactions for which ICE provided the justification.  It applied Exemption 7(C) to protect from disclosure "the names of ICE and DHS employees" as well as "the names, and other personal identifiable information of other individuals contained within the records." Pineiro Decl. ¶ 11.  For the same reasons as above, the Court concludes these withholdings were proper.

---

omitted).  The Court disagrees, given the showing CBP has made through its *Vaughn* index and declaration; this conclusory, nonspecific assertion gets Plaintiffs nowhere.

### 2.    The USCIS Request

#### a.    Exemption 7(E)

USCIS has met its burden to invoke Exemption 7(E).[7]  The material withheld under Exemption 7(E) in the USCIS request consists of technical systems information including "internal codes, case tracking numbers, and the names of databases."  Howard Decl. ¶ 36.  CBP also withheld information related to law enforcement techniques and procedures

> including descriptions of the underlying law enforcement reasons for CBP's actions during the inspections of Plaintiff Fraz Khan at the border, such as the reasons for which he was referred for secondary inspection by CBP; law enforcement characterizations and information CBP deems to be operationally relevant during the inspection of Plaintiff Fraz Khan at the border, such as the results of the use of certain law enforcement techniques; and whether or how information obtained during an inspection is stored and categorized.

*Id.* ¶ 35.

As with the information it withheld in response to request CBP-2021-046570, CBP has shown how each category of information could risk circumvention of the law.  Howard states that release of the withheld technical information "would enable an individual knowledgeable in CBP databases to improperly access the system, facilitate navigation or movement through the system, allow manipulation or deletion of data, and interfere with enforcement proceedings."  Howard Decl. ¶ 36.  Release of the law enforcement techniques and practices information "would reveal the investigatory focus of the law enforcement techniques or procedures at issue, and expose other CBP law enforcement methods, techniques, and procedures."  *Id.* ¶ 37.  As with the prior request,

---

[7] The Court finds that, as with CBP's request, USCIS has met Exemption 7's threshold requirement.  Howard attests that the withheld records were all "compiled . . . for law enforcement purposes" connected with CBP's mission to "protect the borders, enforce federal immigration law, and facilitate international trade and travel."  Howard Decl. ¶ 29.  For the same reasons as above, Howard's representations satisfy USCIS's burden.

the Howard declaration and CBP's *Vaughn* index provide sufficiently detailed information about the information withheld and its nexus to a risk of circumvention of the law to allow the Court to conclude that USCIS has met its burden.

> ### b.        Exemption 7(C)

USCIS has also met its burden to invoke Exemption 7(C).  CBP applied Exemption 7(C) in the USCIS request to personally identifiable information of third parties and certain CBP employees.  Howard Decl. ¶ 30.  The withheld information included names, phone numbers, and other identifying information of those individuals.  *Id.*  CBP attests that disclosure of the information at issue would "constitute a clearly unwarranted invasion of personal privacy" without public benefit. *Id.* ¶ 31.  As above, the Court is satisfied that releasing the withheld names and personal information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

*        *        *

For these reasons, the Court will grant summary judgment to CBP on the assertion of Exemptions 7(E), 3, 5, and 7(C) with respect to request CBP-2021-046570, and to USCIS on the assertion of Exemptions 7(E) and 7(C) with respect to the request made to it.

> ### D.        Segregability

FOIA requires that an agency provide "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt," 5 U.S.C. § 552(b)(9), unless the nonexempt portions are "inextricably intertwined with exempt portions," *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  Segregability is judged using a burden-shifting framework.  First, an agency must provide a "detailed justification" for the non-segregability of the withheld information, although not "so much detail that the exempt material would be effectively disclosed."  *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002).

19

Agencies typically meet their initial burden by providing a sufficiently detailed *Vaughn* index and "a declaration attesting that the agency released all segregable material." *Jud. Watch, Inc. v. DOJ*, 20 F. Supp. 3d 260, 277 (D.D.C. 2014). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). The plaintiffs must then produce a "quantum of evidence" rebutting this presumption, at which point "the burden lies with the government to demonstrate that no segregable, nonexempt portions were withheld." *Id.*

Upon review of the Suzuki, Howard, and Pineiro declarations, as well as CBP's *Vaughn* index, the Court finds that the agencies have met their segregability burdens, even if Plaintiffs do not contest them. The agency declarants attest that each agency "carefully reviewed the responsive records on a line-by-line and page-by-page basis to identify reasonably segregable, non-exempt information." Suzuki Decl. ¶ 76; *see also* Howard Decl. ¶ 39; Pineiro Decl. ¶ 51. The agencies each "determined that there is no additional, meaningful nonexempt information that may be rea-sonably segregated and released without causing foreseeable harm to the agency of interests pro-tected by the FOIA exemptions discussed above." Suzuki Decl. ¶ 76; *see also* Howard Decl. ¶ 39 (same); Pineiro Decl. ¶ 52 (same).

Thus, with these explanations paired with the descriptions of the withholdings in CBP's *Vaughn* index, and the descriptions of withheld information from the Suzuki, Howard, and Pineiro declarations, the Court is persuaded that the agencies have met their burden. *See Jud. Watch, Inc.*, 20 F. Supp. 3d at 277. For these reasons, the Court will grant summary judgment to CBP on segregability for request CBP-2021-046570, and to USCIS for the request directed to it.

### E.    Plaintiffs' Request for Discovery

Finally, Plaintiffs request discovery. Discovery in FOIA cases is "rare." *In re Clinton*, 973 F.3d 106, 113 (D.C. Cir. 2020). And discovery "should be denied where an agency's

declarations are reasonably detailed [and] submitted in good faith." *Taylor v. Babbit*, 673 F. Supp. 2d 20, 22 (D.D.C. 2009) (internal quotation omitted). Plaintiffs argue that Defendants' "conduct in this case, history of non-disclosure of existing records, and their efforts to coerce immigration attorneys to divulge client confidences at the border are indicative of bad faith." ECF No. 35 at 8. They point to Defendants' alleged delays in processing records, the agencies' supplemental searches, and certain records Plaintiffs hoped to—but did not—receive. *Id.* at 8–10.

Discovery is unwarranted. To begin, Plaintiffs fail out of the gate to specify the discovery they want or explain how it will help them show that Defendants have failed to comply with FOIA. And they have not come close to suggesting that the agencies have acted in bad faith in the handling of their FOIA requests, as opposed to—among other things—merely disagreeing with their enforcement tactics. None of this is grounds to order yet-unspecified discovery.

## IV.    Conclusion

For all these reasons, the Court will grant Defendants' motion for summary judgment, deny Plaintiffs' cross-motion, and enter judgment for Defendants. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: February 20, 2026